DECEMBER, 1822.

Howard
v.
Wear.

---

## Brahan and Atwood *against* Nathaniel Ragland.

*December,* 1822.

ASSUMPSIT by *Ragland* against *Brahan* and *Atwood,* as indorsers of a promissory Note, general issue and verdict for the plaintiff. A bill of Exceptions was taken by the defendants, by which it appears that the Note was dated 2d day of *December,* 1819, and payable at the Planters' and Merchants' Bank of *Huntsville,* 20 days after date—That it was in the Bank when due—That the officer of the Bank usually gave notice to the indorsers after a note had been protested, but such notice was not given unless it had been protested—That on the bill of the maker of the Note, the Judge of the Circuit had ordered an Injunction to issue against protesting it—That the Clerk who issued the Injunction was also the Notary Public, whose duty it was to protest such Notes payable at said Bank, and who usually gave notice to the indorsers; and that he was, by the Judge's fiat for the Injunction, prevented from protesting said Note or giving notice. Soon after the Injunction was ordered, the Cashier wrote to the plaintiff informing him thereof. Plaintiff resided about 15 miles *South West* from *Huntsville,* where defendants resided. He sat out for *Huntsville,* and on his way came to the house of his friend, about 14 miles *North West* of *Huntsville,* and was there taken sick. His friend, at his request, went to *Huntsville*; and after consulting Counsel, demanded payment of the maker, which being refused, he gave notice to defendants. The demand and notice were some short time after the 3d day of *January,* 1820.

The Circuit Court charged the Jury that it was for them to determine, from all the circumstances, whether due diligence had been used in demanding payment and giving notice to defendants. That from the situation of this country as to post roads and facilities of communication, the same

What is reasonable notice to charge the indorser, is a question for the Jury and not the Court to determine.

DECEMBER, 1822.

Brahan and
Atwood
v.
Nathaniel Rag-
land.

strictness as to notice in such cases was not required as in England, or other old populous and commercial countries. That if the Jury should be of opinion that the plaintiff had caused notice of the non-payment to be given to defendants within a reasonable time after he had been informed of the failure of the Bank to cause the note to be protested, (in estimating which reasonable time they were to take into view the residence and situation of the plaintiff) they must find the issue for the plaintiff, otherwise they must find for the defendant. To which opinion the defendant excepted, &c.

The case was argued by *Hutchisson* and *Minor* for plaintiffs, and *McKinley* for defendant in Error—the charge of the Circuit Court as set forth in the bill of Exceptions being assigned as Error.

Judge *Lipscomb* delivered the opinion of the Court.

The only point here presented for consideration is, whether the Jury or the Court should determine on the reasonableness of notice to charge the indorser. In the English Courts, from the time of Lord *Mansfield*, it has been considered a mixed question. The Jury inquired if notice had been given and when—the Court then determined on its reasonableness. In the case of *Tindal* against *Brown* (1 Term, 168,) Lord *Mansfield*, after laying it down to be a mixed question of law and fact, said, That whenever a rule could possibly be laid down, the reasonableness of notice should be decided by the Court. All the English decisions follow the same rule. In *Ireland* against *Rip* (11 Johnson, 232,) Judge *Spencer*, after recognizing the principle of the English decisions and insisting on the necessity of certainty and uniformity in commercial transactions, says, decisions of other Courts in other countries on such points are entitled to little consideration. The great extent and population of London and its neighbourhood might well admit of a rule like the one in the case cited, (Scott and al. against Clifford) while such a rule here would be inapplicable and improper. The learned Judge then proceeds to lay down the rule in *New-York,* bottomed on their customs and peculiar situation.

The positions which I think fairly to be deduced from these authorities are, 1st, That if commercial regulations have settled down to fixed customs, those customs become the law which must govern the Jury. 2d, That these customs are not uniform in the commercial world, but in different countries different customs prevail. 3d, That in the absence of such customs the Jury must, from the necessi-

ty of the case, determine on the reasonableness of the notice.

The first position is so fully supported by the authorities quoted, that it does not require the aid of argument. The second can be as fairly sustained by adjudged cases and by common sense. From the cases referred to, it will be seen that a different rule or custom was held to be the law in *New-York* from the one laid down by Lord *Mansfield* as the custom in *London.* This difference is founded on sound reason. How could the custom of *London,* with its vast extent and population, be applicable to *New-York* with its comparatively limited population. In *London* it would be extremely difficult to seek out and make a personal service of notice on the indorser. It is therefore the rule that notice may be sent by the two-penny post, the next day after the days of grace have expired. In *New-York,* personal notice, or something tantamount, as leaving the notice at the house of the indorser, must be given. I believe that Lord *Mansfield* would never have applied the custom in *London* to a case in *Wales* or the *Hebrides*; and there would be as little propriety in applying the customs of *New-York* to the new and scattered settlements of *Alabama.*

In support of the third position, I will only refer to the opinion of Lord *Mansfield* in the case of *Tindal* against *Brown.* His Lordship says, " whenever it is possible to lay " down a rule, the reasonableness of notice should be decided " by the Court;" in which opinion every lawyer will concur. But the very expressions used imply as strongly as words will admit, that a case might occur in which it would be impossible to lay down any rule; and that in such case, reason from principle and from analogy would say that it must be determined by a Jury.

Is there then any fixed and established custom in this State by which the Court could be governed in laying down the rule of law with any sort of certainty? Long and immemorially established customs assume the solemnity and force of law. Policy and necessity not unfrequently cause particular customs to be recognized as the law, long before their antiquity would entitle them to such respect. If it be found that we have a custom prevailing in this country, fixing the reasonableness of the notice to be given to indorsers, and that policy or necessity call on the Courts to support it, if it be not contrary to express law, its origin will not be strictly enquired into. I presume that it will not be contended that in our infant country we have any customs having the force of prescriptions. If, then, we attempt to set up such a custom, it must be derived from an older and more commercial

DECEMBER, 1822.
country. But it would be difficult to determine from what country or place we should borrow the custom. Shall we say to the thinly and widely extended population of this State, you must be governed by the customs of *London* or of *New-York*, when their repugnancy to our local situation and the policy of our country is so very obvious? In many cases the indorsee may reside hundreds of miles from the indorser, and perhaps fifty miles from any post-office. These customs are the offspring of commerce, and are now essential to its prosperity : and in commercial countries, policy calls on the Courts to support them. They were known to the parties when they made their contracts as part of the law governing such contracts ; but we are an agricultural not a commercial people ; and, until we have some established custom in this State as to the reasonableness of notice, it must be determined on by the Jury. It is the unanimous opinion of the Court that the Judgment of the Circuit Court must be affirmed.